J-S30017-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TERRELLE LAMAR SMITH | |
| Appellant | No. 1191 WDA 2017 |

Appeal from the Judgment of Sentence entered July 18, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0014980-2014

BEFORE: BENDER, P.J.E., STABILE, J. AND STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.:                    FILED AUGUST 21, 2018

Appellant, Terrelle Lamar Smith, appeals from judgment of sentence entered in the Court of Common Pleas of Allegheny County on July 18, 2017, amending the January 20, 2016 judgment of sentence imposed following Appellant's conviction of possession of firearm with altered manufacturer's number, carrying a firearm without a license, and flight to avoid apprehension.[1] Appellant argues the evidence was insufficient to support his conviction for flight to avoid apprehension. He also argues the trial court erred in permitting the Commonwealth to introduce evidence of the "De Ruad Mob"

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6110.2(a), 6106(a)(1) and 5126(a), respectively.

tattoo Appellant has on his chest. Following review, we vacate in part and affirm in part.

In its Rule 1925(a) opinion, the trial court condensed the underlying facts of the case, noting "[Appellant] was convicted after a jury disbelieved his alibi witnesses. According to him, he was at a nearby hospital when a City of Pittsburgh officer, who knew him from prior interactions, spotted someone and that someone ran[,] after pulling a gun from the waistband of his pants." Trial Court Opinion, 12/19/17, at 1.

At trial, the Commonwealth presented testimony from two police officers, Officers Lafferty and Robey, who testified they saw two black males standing next to a black Audi on De Ruad Street at approximately 7:20 p.m. on September 17, 2014. Officer Lafferty identified one of those individuals as Appellant and stated that Appellant noticed the officer, quickly turned, began to pull a firearm from his waistband, and ran on De Ruad Street toward Wyandotte Street. Notes of Testimony (N.T.), 10/15/15, at 57, 63, 68. Officer Lafferty explained that the officers gave chase while instructing Appellant to drop the gun. Id. at 64-65. Appellant dropped the gun and continued to run on Wyandotte Street toward Firth Avenue. Id. at 65. The officers were unsuccessful in their attempt to catch up with or apprehend Appellant. In the course of the chase, Officer Robey retrieved the discarded gun. Id. at 44.

Officer Lafferty testified he was familiar with Appellant from other encounters on De Ruad Street, where the chase began. Id. at 58-59. He stated he was aware that Appellant had a tattoo on his chest that read, "De Ruad Mob," and identified a photograph of a bare-chested Appellant showing the tattoo in question. Id. at 60. He explained that "De Ruad Street Mob is a gang in the Hill District of the City of Pittsburgh." Id. at 61.

The Commonwealth also presented two expert witnesses. The first was a member of the Pittsburgh Police Department's Mobile Crime Unit, who processed the gun and collected DNA from it. Id. at 81-85. The second was a DNA analyst from the Allegheny County Medical Examiner's Officer who explained that testing revealed a DNA mixture of three or more individuals. N.T. at 101. He noted that "all of the genes that were associated with the DNA profile of [Appellant] were also found in the DNA results from the DNA mixture that were (sic) found on the gun. [Appellant] could not be excluded as a potential contributor to that DNA mixture." Id. at 102. The prosecutor asked:

> So you are saying basically the two options were [Appellant] touched the - - he is part of the DNA mixture or, in the alternative, the chances of randomly selecting someone who would match that DNA profile that was on the mixture is roughly the same as the chances of winning the Powerball?

Id. at 105. In response, the expert stated, "It's roughly. Roughly that." Id.

The defense presented four alibi witnesses who testified that Appellant was at Mercy Hospital visiting his brother at the time of the events described

by the two officers. The defense also presented testimony from Doron McCarthy, whom Officer Robey had identified as the owner of the Black Audi parked next to which Appellant was standing when first observed by the officers. McCarthy stated that he was familiar with Appellant, though they were not friends. Id. at 161. He testified he was on De Ruad Street on the night in question, visiting his aunt who was ill. While he could not identify the individual chased by the officers, he was "a hundred percent sure" the individual was not Appellant. Id. at 161-169.

On rebuttal, the Commonwealth recalled Officer Lafferty who explained he went to Mercy Hospital after the defense filed its notice of alibi. Id. at 179. However, because approximately six months had passed since the incident and because the hospital had switched camera systems in the interim, the hospital no longer had any footage from that night. Id.

The jury returned a verdict of guilty on all three charges. On January 20, 2016, the trial court sentenced Appellant to a term of four to eight years' incarceration and two years' consecutive probation for possessing a firearm with an altered serial number. The court also imposed a consecutive eight years of probation for carrying a firearm without a license. The court did not impose any additional sentence for flight to avoid apprehension.

Trial counsel did not file a post-sentence motion or an appeal. On September 13, 2016, Appellant filed a pro se petition for post-conviction relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.

Appointed counsel filed an amended petition, which the court granted, permitting Appellant to file a post-sentence motion. By order entered July 18, 2017, the court granted Appellant's motion with respect to Appellant's probationary sentence, which was corrected from eight to seven years. In all other respects the motion was denied. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant asks us to consider two issues, which we have reordered for ease of discussion:

1. Whether the trial court abused its discretion by permitting the Commonwealth to introduce evidence that [Appellant] has a tattoo stating "De Ruad Street Mob" on his chest, and thereby unfairly prejudicing [Appellant] by providing the jury with a basis to conclude that he was in a gang/mob?

2. Whether the Commonwealth introduced sufficient evidence to convict [Appellant] of flight to avoid apprehension where the government's evidence did not demonstrate that [Appellant] fled from the police to avoid a pending criminal charge, a pending criminal trial, a sentence to which he was subject, or a sentence which had yet to be imposed[?]

Appellant's Brief at 6.

In his first issue, Appellant argues the trial court abused its discretion by permitting the Commonwealth to introduce evidence of Appellant's "De Ruad Mob" tattoo. Appellant claims the evidence resulted in undue prejudice, providing the jury with a reason to conclude Appellant was in a gang or mob. As such, Appellant is challenging the trial court's ruling on admission of evidence. This Court has explained:

The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact.

Commonwealth v. Antidormi, 84 A.3d 736, 749 (Pa. Super. 2014) (quoting Commonwealth v. Weakley, 972 A.2d 1182, 1188 (Pa. Super. 2009) (additional citation omitted). "An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant." Id. (quoting Weakley, 972 A.2d at 1189 (additional citations omitted)).

In Antidormi, this Court explained:

The threshold inquiry with admission of evidence is whether the evidence is relevant. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." Commonwealth v. Spiewak, 533 Pa. 1, 617 A.2d 696, 699 (1992). In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact. Commonwealth v. Story, 476 Pa. 391, 383 A.2d 155, 160 (1978).

Commonwealth v. Stokes, 78 A.3d 644[, 654] (Pa. Super. 2013) (internal citations modified for uniformity); see also Pa.R.E. 401; 402; 403.

Otherwise relevant evidence may be excluded if its probative value is outweighed by its potential for prejudice. "The probative value of the evidence might be outweighed by the danger of unfair

- 6 -

> prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence." Commonwealth v. Page, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citing Commonwealth v. Dillon, 592 Pa. 351, 925 A.2d 131, 141 (2007) (citing Pa.R.E. 403)). "The comment to Pa.R.E. 403 instructs that: '"Unfair prejudice" means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.'" Id. (quoting Pa.R.E. 403). However, "[e]vidence will not be prohibited merely because it is harmful to the defendant." Dillon, 925 A.2d at 141. "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." Commonwealth v. Owens, 929 A.2d 1187, 1191 (Pa. Super. 2007) (citing Commonwealth v. Broaster, 863 A.2d 588, 592 (Pa. Super. 2004)).

Id. at 750.

Prior to trial, Appellant's counsel filed a motion in limine, seeking to preclude "any and all testimony containing reference to [Appellant's] purported gang affiliations." Motion in Limine, 7/27/15, at 2 (unnumbered). The motion was based on Officer Lafferty's reference to Appellant as a "known De Raude (sic) Street Mob Gang Member" in his Affidavit of Probable Cause. Id. at ¶ 3. Appellant asserted he knew of "no such organization and has no gang affiliations." Id. at ¶ 5. He claimed character evidence was irrelevant and inadmissible under Pa.R.E. 402. Even if relevant, it would be inadmissible under Pa.R.E. 403 because the danger of prejudice outweighed its probative value. Id. at ¶¶ 6-8.

The Commonwealth did not file a response to the motion. However, prior to trial, the Commonwealth did file a motion to compel, asking the trial court to compel Appellant "to submit to the photographing of any and all

tattoos on [his] body, including tattoos on his chest." Motion to Compel Submission to Photographing of Tattoos, 10/13/15, at 2 (unnumbered). The Commonwealth contended that the photographs were "necessary to show the identity of [Appellant] as a person who is known to be affiliated with De Ruad Street." Id. at 1, ¶ 3.

Argument on pre-trial motions was held on October 13, 2015. At that time, the following exchange took place:

> Appellant's Counsel: I did file a motion with respect to in limine with respect to a reference to this De Ruad Street Gang Mob. [Officer Lafferty] has included that in his reports. And I find that very prejudicial and would like to have that prohibited from testimony. Unless the Commonwealth is prepared to make a foundation.
>
> Trial Court: Is there any way you can establish that that's his gang?
>
> Prosecutor: The officer has informed me he has a tattoo on his chest, [Appellant], that says, "De Raude (sic) Street Mob Gang."
>
> Trial Court: I mean, I can't make him take off his shirt. If you have a video or something, I would allow you to use it. But I can't - - I can't say, "Pull your shirt up and show it." Do you understand what I mean?
>
> Prosecutor: The reason - - I do. The reason we would want to introduce it is just because that occurred - - the crime occurred on that street. It would show that he would likely be in that area because he is member of that gang.
>
> Trial Court: If the officer saw it and he says, "I know he's in that gang because I saw his tattoo on his chest," I mean, that's the street it's on. I am not going to bar anyone from the truth. If that's the truth, then he can say what he wants. You can cross-examine him and do what you want to do about it. But if you saw the tattoo and it said that and that's the street he is on, then I am allowing it to come in. Anything else?

Appellant's Counsel:  No, Your Honor.

Prosecutor:  No, Your Honor.

N.T., Pre-Trial Proceedings, 10/13/15, at 9-11.

At trial, the following exchanges occurred:

Prosecutor:  Now, is there anything that you're familiar with regarding [Appellant] other than the fact that you see him on that street all the time that would associate him with De Ruad Street?

Officer Lafferty:  I know that he as a tattoo which says, "De Ruad Mob" on his chest.

Prosecutor:  I am going to show you what I have marked as Commonwealth Exhibit 4.  Can you describe that?

Officer Lafferty:  That's a photo of [Appellant] with his shirt off smiling and a picture of the tattoo on his chest area.

Prosecutor:  And that's the tattoo that you are referencing?

Officer Lafferty:  Yes.

Prosecutor:  Commonwealth moves to admit Commonwealth Exhibit 5.

Appellant's Counsel:  No objection, Your Honor.

Trial Court:  So admitted.

\* \* \*

Prosecutor:     What's the significance of the fact that it says, "De Ruad Mob?"

Officer Lafferty:  De Ruad Mob, De Ruad Street Mob is a gang in the Hill District of the City of Pittsburgh.  And [Appellant] is - -

Appellant's Counsel:  Objection, Your Honor.

Trial Court:  What would be the objection?

Appellant's Counsel:  May we approach?

Trial Judge:  Sure.

[Whereupon, discussion at side bar as follows:]

Appellant's counsel:  I was under the impression that the admission of the tattoo was limited to his knowledge of the area and there would be no discussion about any gang or mob behavior.

Trial Court:  What's your thoughts?

Prosecutor:  I can direct the witness to say that he's known to frequent that street and not mention the work "gang."  Is that - -

Appellant's counsel:  Well, the line, the questioning tends to establish there is a mob and a gang.  The idea was just the location of the street.

Prosecutor:  The line of questioning was to establish he is known to be in that area.

Appellant's Counsel:  Well, you've done that.

Prosecutor:  That's all I am trying to establish.

Trial Judge:  Let's move on.  The jury will be finders of fact.  I think they will interpret De Ruad to be a mob.  They will make that determination.  If you have any basis to establish that's a gang, that he is in a gang, you can use it.  But if there is nothing specifically that verifies he is, then I think that we've done enough, and the jury can draw their own conclusions from the tattoo.

Prosecutor:  Okay.

Appellant's Counsel:  Thank you, Your Honor.

[Open court, jury present.]

> Prosecutor: Officer, this occurred on De Ruad Street when you first saw [Appellant]; correct?
>
> Officer Lafferty: Yes.
>
> Prosecutor: And that's the same De Ruad, same spelling as what's on his chest?
>
> Officer Lafferty: Affirmative. Yes.

N.T., Trial, 10/15/15, at 60-63.

As the above exchanges reflect, Appellant's counsel did not object to the questions about the tattoo or to the introduction of the photograph into evidence. It was only when Officer Lafferty noted that De Ruad Street Mob is a Hill District gang that counsel objected, before Officer Lafferty offered any testimony concerning Appellant's affiliation, or lack thereof, with that gang. When testimony resumed following the side bar discussion, there was no further reference to the De Ruad Mob, other than to confirm De Ruad Street as the location of the events of September 17, 2014, and the spelling of Appellant's tattoo. Moreover, there was no objection lodged to the Commonwealth's closing when the prosecutor referenced the tattoo and its apparent indication that Appellant "identifies himself as a member of the De Ruad Mob." N.T., Trial, 10/16/15, at 197.

Addressing Appellant's contention that the trial court abused its discretion in permitting evidence of Appellant's tattoo, the trial court reasoned:

> [Appellant] has a tattoo on his chest. It says "De Ruad Mob." This incident happened on De Ruad Street. A rather short street in the

City of Pittsburgh not far from UPMC-Mercy Hospital and PPG Paints Arena, the home of the current Stanley Cup Champion, Pittsburgh Penguins.[2] Before trial this admissibility of the "tattoo" was brought up. The court heard from both sides. Ultimately, the court authorized a photograph to be taken of the tattoo and that photograph was then admitted. The basis for its admission was its relevance outweighed the prejudice. The case was tried through the filter of an alibi offered by [Appellant]. Him having a tattoo made it more probable than not that he would be on that very street when the officer saw him immediately before the chase began.

Trial Court Rule 1925(a) Opinion, 12/19/17, at 2 (unnumbered) (some capitalization omitted).

Appellant argues the trial court considered only the relevance of the evidence, failing to analyze whether the relevance outweighed the prejudice associated with the tattoo. Appellants' Brief at 19. He contends:

Such is underscored by (i) trial testimony from law enforcement [] that [Appellant] was seen De Ruad Street all the time, making evidence of the tattoo unnecessary and cumulative to other evidence placing [Appellant] frequently on the street in questions, and (ii) [the trial judge's] own statement during trial that the jury "will interpret De Ruad to be [a] mob."

Id. at 19 (citation to notes of testimony omitted). However, as counsel for the Commonwealth noted during argument on its motion to compel submission to photographing the tattoo:

[Appellant] is the one that got the tattoo that said "Mob." He is the one making the statement he is part of the De Ruad Mob. It's not anyone else putting those words in his mouth. He chose to get that tattoo. Any prejudicial value is coming from the fact [Appellant] put the word "Mob" in.

_____

[2] The trial court's opinion predated the June 2018 Stanley Cup championship in which the Washington Capitals defeated the Las Vegas Golden Knights.

N.T., 10/14/15, at 18-19.  We agree.

As the Commonwealth suggests, "the only real issue for the jury was the identity of the man whom the officers saw discard the gun on De Ruad Street.  The challenged evidence was a photo of a tattoo that established [Appellant's] connection to that particular street."  Commonwealth Brief at 15.

We find the trial court properly concluded the relevance of evidence regarding Appellant's tattoo outweighed any prejudice to Appellant.  We discern no abuse of discretion in that determination.  This conclusion is bolstered by Officer Lafferty's testimony relating to his identification of Appellant, whom he knew from previous encounters—including one documented as recently as two weeks before the events in question, as well as the officer's prior awareness of the tattoo at issue.  See N.T. Trial, 10/15/15, at 57-60.  Moreover, Officer Lafferty was unequivocal in his identification of Appellant, even without reference to the tattoo, as reflected in the following exchange between Officer Lafferty and the prosecutor:

> A. I got a good look at him when we were on De Ruad Street because he was facing me whenever I dropped down onto the street.  And when he ran he turned around, I think around two times looking at me, so I got a look at, like, the side of his face when he was running.
>
> Q. When did you first know it was [Appellant]?
>
> A. Immediately.  I immediately knew it was him.  While I was running - - When I got to Watson [Street] I called out over the radio the actor's description.  And then I actually said the name.  I said, "It's Tyrone Smith.  It's Tyrone Smith."  That's what I said over the radio.  But I was huffing and puffing.  And I realized, oh,

I gave the wrong name. And I said, "It's Terrelle Smith, Terrelle Smith." And I said it over the radio numerous times.

Q. So you knew who it was immediately and as you were chasing him?

A. Yes.

N.T., Trial, 10/15/15, at 68.

We find no abuse of discretion in the trial court's ruling. Appellant's first issue fails.

In his second issue, Appellant contends the evidence was insufficient to support his conviction of flight to avoid apprehension. A person is guilty of "flight to avoid apprehension, trial or punishment" if he "willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment[.]" 18 Pa.C.S.A. § 5126(a).

In its Rule 1925(a) opinion, the trial court agreed with Appellant that the evidence was not sufficient to support the conviction. The court determined the only evidence to support the jury's verdict was the stipulation between the parties providing that Appellant had previously been convicted of a felony as of the date of the events leading to his arrest. The court explained:

> This is simply not enough. The jury needed more facts. The evidence did not show he was avoiding trial. In fact, the evidence showed his trial was over and done with. The evidence did not show he was avoiding punishment or avoiding something that might flow from a sentence, like a probation violation warrant. The totality of the government's evidence fails to answer the quintessential question in this type of case – What was he avoiding? On this record that simple question remains a mystery. The conviction at Count 3 should be reversed and [Appellant] should be adjudicated not guilty of this accusation.

Trial Court Rule 1925(a) Opinion, 12/19/17, at 2-3 (unnumbered) (citation omitted).

In its brief, the Commonwealth notes that it "is constrained to agree with [Appellant] that the evidence was indeed insufficient to sustain his conviction for violating § 5126." Commonwealth Brief at 17. However, the Commonwealth also recognizes that Appellant did not receive any additional sentence for his conviction of flight to avoid apprehension. Id. As a result, the Commonwealth contends, we need not remand for resentencing because vacating the conviction will not disturb the sentencing scheme. We agree. See In the Interest of P.S., 158 A.3d 643, 652-53 (Pa. Super. 2017), appeal denied, 174 A.3d 1029 (Pa. 2017) (citing Commonwealth v. Thur, 906 A.2d 552, 569 (Pa. Super. 2006) ("if our decision does not alter the overall [sentencing] scheme, there is no need for a remand.")).

Appellant's conviction for flight to avoid apprehension is vacated. In all other respects, we affirm Appellant's judgment of sentence.

Judgment vacated in part and affirmed in part.

- 16 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: _8/21/2018_